STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE & CASUALTY COMPANY,

            **Plaintiffs,**

-vs-                             **Case No.  6:11-cv-1373-Orl-31GJK**

ALTAMONTE SPRINGS DIAGNOSTIC
IMAGING, INC.; PREMIER MEDICAL
IMAGING; RONALD LANDAU, M.D.; and
BRAD FREMED,

            **Defendants.**

_____/

# ORDER

This cause comes before the Court without oral argument on a Motion to Dismiss (Doc. 27) filed by Defendants Altamonte Springs Diagnostic Imaging, Inc. d/b/a Mid Florida Imaging, Inc. and Premier Medical Imaging, and Ronald Landau, M.D. (collectively, "Defendants"); and the Response (Doc. 28) filed by Plaintiffs State Farm Mutual Automobile Insurance Company, and State Farm Fire & Casualty Company (collectively, "State Farm").

## I. Background

This case involves $1 Million worth of alleged illegal and fraudulent claims for No-Fault Personal Injury Protection ("PIP") benefits submitted to State Farm by Defendants. The First Amended Complaint (Doc. 18) alleges, in material part, that Defendant Ronald Landau, M.D., ("Landau"), a licensed physician, is held out as the "sole owner" of Altamonte Springs Diagnostic

Imaging, Inc. ("ASDI").[1] Despite this title, State Farm claims that ASDI was actually owned and operated, at least in part, by Defendant Brad Fremed ("Fremed") and his company Fremco. Since Fremed is not a licensed physician, his partial ownership of ASDI violates relevant provisions of the Florida Heath Care Clinic Act ("HCCA"). FLA. STAT. § 400.900, *et seq*.

In 2004, the Florida Legislature enacted the HCCA to strengthen the regulation of health care clinics throughout the state. In addition to expanding the types of businesses required to obtain licenses, it requires, *inter alia*, background checks for all owners, clinic inspection and certifications, proof of financial responsibility, and higher fees to obtain licensure. (Doc. 18, ¶ 21). This case however, turns on an exception to these requirements in FLA. STAT. § 400.9905(4)(g). It states, in relevant part, that "the licensure requirements of this part do not apply to . . . [businesses] . . . which are wholly owned by one or more licensed health care practitioners . . . ." FLA. STAT. § 400.9905(4)(g).

It is undisputed that in November 2007, Defendant Ronald Landau, M.D. ("Landau"), entered into a Joint Venture Agreement (the "Joint Venture Agreement" or "Agreement") with Defendant Brad Fremed ("Fremed") and his "management company" Fremco. The Agreement provides that Fremed was responsible for the day to day management, but that "Landau is the sole owner of ASDI." State Farm points out that the Agreement makes the true intent of the parties clear:

the Parties [Landau and Fremed] acknowledge that the reason for ASDI to be owned solely by Landau is due to the AHCA[2] licensing rules and regulations, which impose less stringent

---

[1] ASDI operates MRI facilities under the business names of Mid Florida Imaging, Inc. and Premier Medical Imaging.

[2] The Florida Agency for Health Care Administration ("AHCA").

regulations, because he is a physician; and, in the absence of such rules and regulations, it would be the desire for Landau and Fremed to equally own ASDI . . . .

(Doc. 18, ¶ 35). The First Amended Complaint asserts that ASDI was "secretly co-owned" by Fremed, evidenced by the fact that he controlled "virtually every aspect of ASDI's operations." (Doc. 18 at ¶ 26).

According to Florida law, "it is unlawful to provide services that require licensure . . . without first obtaining . . . a license." FLA. STAT. § 408.804. Further, Florida's no-fault insurance law provides that, "[a]n insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered . . . ." FLA. STAT. § 627.736(5)(b)(1)(b). Therefore, State Farm seeks the repayment of all PIP benefits submitted by ASDI while it was in violation of the relevant Florida licensing provision.

The First Amended Complaint asserts five causes of action. Count I asserts a claim for common law fraud against all Defendants. Count II asserts a claim for unjust enrichment against all Defendants. Count III asserts a claim under the Florida Deceptive and Unfair Trade Practices Act, ("FDUTPA"), FLA. STAT. § 501.201, *et seq*., against all Defendants. Finally, Counts IV and V assert RICO claims under 18 U.S.C. § 1962(c) and (d) against Defendants Landau and Fremed only. Defendants filed the instant Motion to Dismiss (Doc. 27) on October 21, 2011.

## II. Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will

liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411,421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

## III. Analysis

### A. The Joint Venture Agreement

Defendants assert that each claim is barred by the Joint Venture Agreement which states, *inter alia*, "Landau is the sole owner of ASDI." (Doc. 27 at 2). Although Defendants admit that Fremed shared in the profits and partly controlled the business, they argue that the issue of ownership is settled by the fact that Landau owned all ADSI stock. Accordingly, "[w]hile control and sharing of profits may be useful factors to consider . . . where no stock has been issued[,] . . . it serves no purpose in the

present case." (Doc. 27 at 3) (citing *Mirabilis Ventures, Inc. v. Palaxar Group, LLC.*, 2010 WL 5582878 at *11 (M.D. Fla. Dec. 15, 2010). At this stage in the proceedings however, this argument must fail. State Farm has alleged that Landau and Fremed fraudulently concealed the true ownership of ASDI. Defendants cannot avoid this claim simply by citing the Joint Venture Agreement to which State Farm was not a party.

### B. FLA. STAT. § 627.736

Defendants argue that the No-Fault statute, FLA. STAT. § 627.736, does not reach the alleged unlawful conduct in this case because, even if ASDI was not properly licensed, the services were lawfully rendered by a licensed physician. In support, Defendants cite to FLA. STAT. § 627.736(1)(a) which provides, ". . . medical benefits shall provide reimbursement only for such services and care that are *lawfully provided, supervised, ordered, or prescribed* by a [licensed] physician . . . ." FLA. STAT. § 627.736(1)(a) (emphasis added).[3]

Section 627.736(1)(a) is a prohibition, not a mandate–which is clear when read in conjunction with the remainder of the statute. For example, subsection (5)(b)(1)(b) provides "[a]n insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered . . . ." FLA. STAT. § 627.736(5)(b)(1)(b). Subsection 5(d) provides that "[n]o statement of medical services may include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services." FLA.

---

[3]This is the same argument rejected by the Court in *State Farm Fire and Cas. Co. v. Silver Star Health and Rehab, Inc.*, No. 10-cv-1103-ORL-31GJK (M.D. Fla. filed July 23, 2010) [hereinafter *Silver Star*] (granting in part, denying in part, motion for summary judgement (Doc. 157)).

STAT. § 627.736(5)(d). Subsection (4)(b) requires that insurers provide notice prior to contesting a claim, but it also states that,

> [t]his paragraph does not preclude or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted under, or in violation of, subsection (5). Such assertion by the insurer may be made at any time, including after payment of the claim or after the 30-day time period for payment set forth in this paragraph.

FLA. STAT. § 627.736(4)(b). Finally, " '[l]awful' or 'lawfully' means in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." FLA. STAT. § 627.732(11).

Noticeably absent from Defendants' brief is any discussion of FLA. STAT. §§627.736(4), 627.736(5), or 627.732(11). These sections are only mentioned in passing, after which Defendants arbitrarily conclude they are erroneous. Other than this conclusory assertion however, Defendants present no reason why the Court should ignore a large portion of the statutory language.

### C. Count I - Common Law Fraud

The "essential elements" of common law fraud under Florida law are: (1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person. *Gandy v. Trans World Computer Tech. Grp.*, 787 So.2d 116, 118 (Fla. 2d DCA 2001); *see also Tucker v. Mariani,* 655 So.2d 221, 225 (Fla. 1st DCA 1995). Defendants move to dismiss Count I on the basis that it is not pled with particularity pursuant to FED. R. CIV. P. 9(b). Specifically, they claim that State Farm "fails to identify even a single bill that allegedly contains a false entry." (Doc. 27 at 9).

### 1. ASDI

The Florida No-Fault statute provides, that "[n]o statement of medical services may include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services." FLA. STAT. § 627.736(5)(d). State Farm argues that "[b]y submitting bills to State Farm, Defendants represented that the services were lawfully rendered." (Doc. 28 at 8). Thus, State Farm alleges that every bill submitted by Defendants constituted a false statement of fact. This is sufficient to satisfy Rule 9(b).

Defendants also move to dismiss Count I on the basis that it is barred by the economic loss rule. *See Indemnity Ins. Co. v. Am. Aviation, Inc.*, 891 So.2d 532 (Fla. 2004). The economic loss rule is a judicially created doctrine which prohibits a tort action for purely economic losses where the parties are in contractual privity. *Id*. at 536. In this context, ASDI was the assignee of the right to payment of PIP benefits. "Under Florida law, the assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty." *Shaw v. State Farm Fire & Cas. Co.*, 37 So.3d 329, 332 (Fla. 5th DCA 2010). Accordingly, "[b]ecause the economic loss rule applies when the fraud relates to the performance of the contract," and ASDI assumed no duty of performance through the assignment of benefits, the economic loss rule does not bar State Farm's claim for common law fraud. *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 Fed. App'x 714, 719-20 (11th Cir. 2011) (citation omitted).

### 2. Landau Individually

Defendants assert that the only allegedly fraudulent representations made to State Farm were made by, or on behalf of, ASDI in the form of PIP claims. Accordingly, they argue, Count I must be dismissed as to Landau individually. State Farm claims in response that Landau is individually liable

for these statements because "everyone who knowingly participates in a fraud scheme will be liable for the conduct of their co-schemers even if some participants do not make the fraudulent statements." (Doc. 28 at 9) (citing *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, 1997 WL 728084 (M.D. Fla. Oct. 23, 1997) ("Personal involvement is not required after a defendant involves himself in a fraudulent scheme; he may be liable for the acts of his co-schemers." *Id.* at *3 (citing *United States v. Funt*, 896 F.2d 1288, 1294 (11th Cir.1990)) and *United States v. Gonzalez*, 404 Fed. App'x 403 (11th Cir. 2010)). Upon review, the Court finds that the Amended Complaint sufficiently alleges Landau's personal involvement in the alleged scheme. *See Physicians Injury Care Center,* 427 Fed. App'x at 720-21.

### D. Count II - Unjust Enrichment

The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Henry M. Butler Inc. v. Trizec Properties Inc.*, 524 So.2d 710 (Fla. 2d DCA 1988).

Defendants move to dismiss Count II on the basis that State Farm received "everything it bargained for, namely, radiology services performed by a licensed physician." (Doc. 27 at 15); *see Moynet v. Courtois*, 8 So.3d 377, 379 (Fla 3d DCA 2009). However, although State Farm is required to pay no-fault PIP benefits under Florida law, it is not required to pay PIP benefits for services which were unlawfully rendered. Accordingly, State Farm "bargained for" radiology services rendered "lawfully" as defined under Florida law. Because Defendants were in violation of the HCCA licensing provisions, the services provided were not "lawful at the time rendered."

Defendants contend that, even if this is true, "State Farm cannot show how it was harmed when it was contractually obligated to its insureds for the cost of radiology services," whether those services were provided by Landau, ASDI, or any other provider. (Doc. 27 at 15). Florida law is clear that, had State Farm been aware of licensing violation at the time Defendants submitted their claims for PIP benefits, it could have refused payment under FLA. STAT. § 627.736(5)(b)(1)(b). *Active Spine Ctrs., LLC v. State Farm Fire and Cas. Co.* 911 So.2d 241, 242 (Fla. 3d DCA 2005); *see also Silver Star*, (Doc. 157 at 10). State Farm was unaware of the licensing violation because of Defendants allegedly fraudulent conduct. This is sufficient to state a claim for unjust enrichment.

Defendants contend that Count II fails because there is an adequate remedy at law.[4] Although "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist, . . . that rule does not apply to unjust enrichment claims." *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998). Rather, "[i]t is only upon a showing that an express contract exists [between the parties] that the unjust enrichment ... count fails." *Id. See also Physicians Injury Care Center,* 427 Fed. App'x at 722. *See also Silver Star*, (Doc. 157 at 12 n.5).

### E. Count III - FDUTPA

To establish a prima facie case under FDUTPA, a plaintiff is required to show (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. FLA. STAT. § 501.201, *et seq*. *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006). Florida courts have said that, although actual damages are usually measured by the difference in market value between what was provided and what

---

[4] Defendants also moved to dismiss Count II on the basis that there was an express contract between the parties. That argument fails because the parties were not in privity of contract. *See Physicians Injury Care Center,* 427 Fed. App'x at 720.

should have been provided, "[a] notable exception to the rule may exist when the product is rendered valueless as a result of the defect–then the purchase price is the appropriate measure of actual damages." *Rollins*, 951 So.2d at 869; *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 454 (Fla. 1st DCA 1985).

Defendants argue that there are no allegations "establishing that there was *any* difference in value between the radiology services Dr. Landau, on behalf of ASDI, provided to State Farm's insured[ ] and the services that were promised." (Doc. 27 at 17). State Farm claims in response that it is not required at this stage to allege that Defendants' services were without value, only that it suffered actual damages as a result of their deceptive acts. The Court agrees. It is sufficient at this stage that State Farm has alleged that, but for Defendants' deceptive act, it would not have paid PIP benefits. While it may be true that *some* value was conveyed by Defendants, State Farm is not required to allege the exact amount of damages in the Complaint.

Defendants also move to dismiss Count III on the basis that State Farm fails to establish causation. Defendants assert that "merely stating" that State Farm was damaged "as a result" is insufficient. (Doc. 27 at 18). In this case, State Farm had a statutory right to refuse to pay the claims submitted by Defendants while in violation of HCCA licensing requirements. It paid the claims as a direct result of Defendants' allegedly fraudulent conduct. Accordingly, Defendants' Motion will be denied as to Count III.

### F. Counts IV and V - RICO

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "Any person injured in his business or property by reason of a violation . . ." has a civil cause of action for the recovery compensatory damages, treble damages and attorneys' fees. 18 U.S.C. § 1964(c). To establish a prima facie civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of § 1962; (2) injury to his or her business or property, and (3) a causal connection between the racketeering activity and the injury. *Avigan v. Hull*, 932 F.2d 1572 (11th Cir. 1991); *State Farm Mut. Auto. Ins. Co. v. Kugler*, 2011 WL 4389915 at *3-*4 (S.D. Fla. September 21, 2011).

Defendants move to dismiss Counts IV and V for three reasons: (1) failure to meet the pleading requirements of Rule 9(b); (2) failure to allege sufficient "concrete loss"; and (3) lack of causation. The first two arguments are based entirely on Defendants' erroneous interpretation of the statute and will be denied. Defendants' argument regarding causation merits further discussion.

Although the inquiries often blend together, the "by reason of" requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006). A wrongful act is "a proximate cause if it is a substantial factor in the sequence of responsible causation." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) (internal quotation omitted). In contrast, "the test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir.1998). To establish standing plaintiffs must show a "direct relation between the injury asserted and the injurious conduct alleged" *Holmes*, 503 U.S. at 268. *See also Green Leaf Nursery v. E.I. DuPont Nemours and Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003); *Maiz v. Virani*, 253 F.3d 641, 657 (11th Cir. 2001); *Bivens Gardens Office Bldg.*,

*Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir.1998) (holding that a party whose alleged injuries result from "the misfortunes visited upon a third person by the defendant's acts lacks standing to pursue a claim under RICO") (quoting *Holmes*, 503 U.S. at 268).

Defendants' assert that State Farm lacks standing to sue under RICO because any alleged misrepresentation was made to the state licensing authority, not to State Farm.[5] This argument is unpersuasive. Fraudulently obtaining a license–or in this case, fraudulently claiming an exemption–is not an end in itself; rather, it is a means to obtain payment for services that one would not otherwise be entitled to. That is sufficient to establish the requisite causation.

In light of the foregoing, it is **ORDERED** that Defendants' Motion to dismiss (Doc. 27) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 21, 2011.

Copies furnished to:

Counsel of Record
Unrepresented Party

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

---

[5] This argument is premised, in part, on a false assumption that Defendants had no duty to disclose their licensing status. FLA. STAT. § 627.736(5)(d) provides however, that "[n]o statement of medical services may include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services." Accordingly, in submitting claims for PIP benefits, Defendants impliedly represented to State Farm that they were properly licensed.