UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE & CASUALTY COMPANY,

**Plaintiffs,**

-vs-                                                                                        Case No. 6:11-cv-1373-Orl-31GJK

ALTAMONTE SPRINGS DIAGNOSTIC
IMAGING, INC.; PREMIER MEDICAL
IMAGING; RONALD LANDAU, M.D.; and
BRAD FREMED,

**Defendants.**
_____/

# ORDER

This cause comes before the Court on a Motion to Dismiss the Counterclaim (Doc. 51), filed by Plaintiffs, State Farm Mutual Automobile Insurance Co., and State Farm Fire & Casualty Co. (collectively "State Farm") and the Response (Doc. 52) filed by Defendant Altamonte Springs Diagnostic Imaging, Inc. ("ASDI").

**I. Background**

This case involves $1 Million worth of alleged illegal and fraudulent claims for No-Fault Personal Injury Protection ("PIP") benefits submitted to State Farm by Defendants. The First Amended Complaint (Doc. 18) alleges, in material part, that Defendant Ronald Landau, M.D., ("Landau"), a licensed physician, is held out as the "sole owner" of Altamonte Springs Diagnostic

Imaging, Inc. ("ASDI").[1] Despite this title, State Farm claims that ASDI was actually owned and operated, at least in part, by Defendant Brad Fremed ("Fremed") and his company Fremco. Since Fremed is not a licensed physician, his partial ownership of ASDI violates relevant provisions of the Florida Health Care Clinic Act ("HCCA"). FLA. STAT. § 400.900, *et seq*.

On February 16, 2012, ASDI filed an amended counterclaim seeking declaratory relief arising from State Farm's alleged systematic underpayment of claims for MRI services submitted by ASDI. Specifically, the Counterclaim alleges that State Farm improperly used the Medicare Outpatient Prospective Payment System ("OPPS") cap, in violation of Florida law, to systematically underpay ASDI for reasonable charges.

To properly conceptualize the Counterclaim, it is necessary to review the statutory scheme at issue.[2] Florida's No-Fault statute requires every PIP insurer to pay "eighty percent of all reasonable expenses for medically necessary" procedures. Fla. Stat. § 627.736(1)(a). Section 627.736(5)(a)(1) defines "reasonable expenses,"

> [i]n no event, however, may such a charge be in excess of the amount the person or institution customarily charges for like services or supplies. With respect to a determination of whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable

---

[1] ASDI operates MRI facilities under the business names of Mid Florida Imaging, Inc. and Premier Medical Imaging.

[2] Florida's No-Fault statue has gone through several incarnations during the period relevant to the Counterclaim. New versions took effect on January 1, 2008, July 1, 2008, and July 7, 2009. Additional proposed changes are in the works as well. *See, e.g.,* 2012 Florida House Bill No. 119, Florida One Hundred Fourteenth Regular Session. For purposes of the instant Motion, the Court will reference only the July 7, 2009 version.

> to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

Fla. Sta. § 627.736(5)(a)(1). Key to the instant claim, however, Fla Stat. § 627.736(5)(a)(2) provides that,

> 2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
>
> . . .
>
> (f) . . . 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

Fla Stat. §627.736(5)(a)(2)(f). Subsection (a)(3) provides that, for purposes of subsection 2, the applicable schedule is the one "in effect at the time" and "for the area" in which the services were rendered, so long as that amount is not less than the participating physicians schedule of Medicare Part B for 2007. Subsection (a)(4) provides that,

> Subparagraph 2. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 2. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes.

Defendants allege that State Farm has violated, *inter alia*, section (5)(a)(4) by applying "Medicare's Outpatient Prospective Payment System ("OPPS") cap, and/or some otherwise improper

methodology not authorized by [Florida law]." (Doc. 44, ¶ 30). Unlawful use of this cap allegedly resulted in State Farm routinely paying ASDI "less than the full allowable amount under the participating physicians schedule of Medicare Part B for 2007." (Doc. 44, ¶ 31). Rather than seek damages for underpayment, ASDI asserts only one Count for declaratory judgment. (Doc. 44 at 33). State Farm now moves to dismiss the Counterclaim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II. Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id*. at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

**III. Analysis**

Under 28 § U.S.C. 2201, a court "may declare the rights and other legal relations" between parties only in cases of "actual controversy." As the Supreme Court instructed half a century ago, "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree . . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

> ASDI requests declaratory relief based on the following questions,
>
> (1) What is the proper allowable amount under the participating physicians schedule of Medicare Part B 2007 required by Sections 627.732(5)(a)(2)(f), (a)(3), and/or (a)(4), Fla. Stat.?
>
> (2) Whether State Farm may lawfully reduce the MRI fees authorized under Sections 627.732(5)(a)(2)(f), (a)(3), and/or (a)(4), Fla. Sta., using the OPPS cap?
>
> (3) Whether State Farm has violated Sections 627.732(5)(a)(2)(f), (a)(3), and/or (a)(4), Fla. Stat., by routinely failing and/or refusing to pay PIP benefits to the MRI provider and the class members for MRI services in an amount based on 200% of the allowed amount under the participating physicians schedule Medicare Part B for 2007 or the fee schedule in effect at the time the services, supplies, or care were rendered?

(Doc. 44 at 33).

The first question does not present an immediate, 'actual controversy' because it is not based on any particular payment or set of payments, but rather, appears to request an "across the board" advisory opinion regarding the proper calculation method established in the statute. ASDI attempts to clarify its position in the last page of the Counterclaim by requesting "an explanation of the proper reimbursement for MRI services under the participating physicians schedule of Medicare Part B for 2007 . . . ." (Doc. 44 at 34). Such a broad, abstract question is clearly not proper for declaratory relief. *See Flast v. Cohen,* 392 U.S. 83, 96, 88 S. Ct. 1942, 1950, 20 L. Ed. 2d 947 (1968); *Coffman v. Breeze Corps.*, 323 U.S. 316, 65 S.Ct. 298, 89 L.Ed. 264 (1945) ("[t]he declaratory judgment procedure ... may not be made the medium for securing an advisory opinion in a controversy which has not arisen.").

The second and third are variations of the same question: under Sections 627.732(5)(a)(2)(f), (a)(3), and/or (a)(4), Fla. Stat., may State Farm use the OPPS cap to reduce the fees it paid to ASDI? This question is not proper for declaratory relief for at least three reasons. First, the No-Fault statute presents an insurer with a choice of calculation methods. *Geico Indem. Co. v. Virtual Imaging Services, Inc.*, 79 So. 3d 55, 58 (Fla. 3d DCA 2011), *reh'g denied* (Feb. 15, 2012) ("[A]s section 627.736(5)(a)(2) provides that insurers "may" consult the Medicare fee schedule, it follows that, under the statute, insurers who choose not to do so have recourse to some alternative means for determining a reimbursement amount."); *Kingsway Amigo Ins. Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 67 (Fla. 4th DCA 2011) (the "plain language [of the No-Fault statute] allows an insurer to choose between two different payment calculation methodology options . . . ."). ASDI has not alleged which method State Farm has used in calculating its payments to ASDI for imaging services. If State Farm is using the

(5)(a)(1) method, then the OPPS cap is inapposite.[3] If instead it chose the fee schedule in (5)(a)(2), then the case law suggests that application of the OPPS cap is improper. *See Nationwide Mut. Fire Ins. Co. v. AFO Imaging, Inc.*, 71 So. 3d 134, 138 (Fla. 2d DCA 2011) ("Inasmuch as subsections (5)(a)(2)(f) and (5)(a)(3) unambiguously referred to, and only to, Medicare Part B's participating physicians schedule, the minimum amount due for the MRI services provided in a nonemergency, nonhospital setting to the Insurance Companies' PIP insureds covered under Florida law could not have been capped by the OPD fee schedule amount payable by Medicare under OPPS."); *see also All Family Clinic of Daytona Beach Inc. v. State Farm Mut. Auto. Ins. Co.,* 685 F. Supp. 2d 1297, 1299 (S.D. Fla. 2010) *aff'd sub nom. All Family Clinic of Daytona Beach, Inc. v. State Farm Mut. Auto. Ins. Co.*, 448 F. App'x 906 (11th Cir. 2011).

Second, assuming that State Farm did use the fee schedule in section 627.736(5)(a)(2), declaratory judgment cannot be based on speculative future harm. ASDI must allege, at a minimum, that it submitted bills to State Farm which have not yet been paid and that State Farm has indicated an intention to unlawfully apply the OPPS cap. *See Coffman*, 323 U.S. 316. All it has done is allege

---

[3] If an insurer chooses not to use the method proscribed in § 627.736(5)(a)(2), there does not appear to be a specific prohibition on what internal calculation method it uses to determine whether a charge is "reasonable" under §627.736(5)(a)(1). Indeed, that section states that,
> [w]ith respect to a determination of whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

Fla. Stat. § 627.736(5)(a)(1).

that State Farm routinely paid "less than the full allowable amount under the participating physicians schedule of Medicare Part B for 2007." (Doc. 44, ¶ 31).

Third, to the extent it seeks reimbursement for past underpayment, ASDI has a sufficient remedy at law for damages.[4] *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1072 (Fla. 2006) (a PIP suit seeks "to recover damages for breach of an insurance contract."); *Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic*, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005) (a medical provider may bring an action for PIP benefits if the insured has assigned "his or her right to such benefits under the policy to the medical provider."). Accordingly, the Counterclaim will be dismissed without prejudice.

State Farm also challenges ASDI's standing to bring suit because it does not specifically attach the alleged assignments. Assuming that assignments were made as alleged (as the Court must as this stage), ASDI has a right to payment from State Farm, and as such, standing to challenge the propriety of those payments. *See McGrath Cmty. Chiropractic*, 913 So. 2d at 1285. Accordingly, to the extent State Farm moves to dismiss the Counterclaim for lack of standing, that will be denied.

In light of the foregoing, it is,

---

[4] "It is well-settled that 'equitable relief is available only in the absence of an adequate remedy at law.'" *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 503 (11th Cir. 2007) (citations omitted). "In order to receive declaratory or injunctive relief, plaintiffs must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir.2000) (citing *Newman v. Alabama*, 683 F.2d 1312 (11th Cir. 1982)). "The critical question is whether there exists an adequate remedy at law, not whether the moving party prefers one remedy to another." *SME Racks*, 243 F. App'x at 503–04 (citing *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1531 (11th Cir. 1994)).

**ORDERED** that State Farm's Motion to Dismiss (Doc. 51) is **GRANTED**. The Counterclaim is **DISMISSED without prejudice**. Defendant's Motion for leave to amend is **GRANTED**. Defendant may file an amended counterclaim by no later than May 18, 2012.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 2, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**